FRANK BENDEKOVICH, APPELLANT, V. OMAHA & COUNCIL
BLUFFS STREET RAILWAY COMPANY, APPELLEE.

FILED NOVEMBER 21, 1907. NO. 14,916.

Carriers: NEGLIGENCE: QUESTION FOR JURY. In the circumstances of
this case, the question of whether a passenger was guilty of neg-
ligence in going from the platform to the step of a moving street
car with the intention of alighting therefrom is a question of fact
for the jury, and not one of law for the court.

APPEAL from the district court for Douglas county:
WILLIAM A. REDICK, JUDGE. *Reversed.*

*T. J. Mahoney* and *T. J. Nolan*, for appellant.

*John L. Webster* and *W. J. Connell*, contra.

AMES, C.

This is an appeal from a judgment for the defendant in
an action to recover damages for a personal injury. There
is no conflict of evidence, and for the sake of convenience
the following statement of facts is copied from the brief
of the appellee: "The plaintiff at the time of the accident
in question was 18 years of age. He is a native of Austria,
and had been in this country for only two months. About
10 o'clock on the evening of December 7, 1903, he boarded
one of the defendant's south bound trains at the corner of
Sixteenth and Williams streets in the city of Omaha. The
train consisted of two cars, a motor and a trailer. Plain-
tiff boarded the first or motor car, and stood on the east
or left-hand side of the rear platform thereof until he
reached J street in South Omaha. At that point the street
car tracks run north and south on Twenty-Fourth street,
and J street intersects Twenty-Fourth street. Plaintiff
testified that shortly after he had boarded the train he
paid his fare to the conductor, and told him that he wanted
to get off at J street, and that the conductor nodded his
head; that about four blocks north from J street he again

told the conductor, and received the same sign from him; and that the same thing occurred again about half a block before reaching J street; that there is a church on the northeast corner of Twenty-Fourth and J streets, and, when the car was right across from the church, he walked toward the west and stepped down upon the step of the car, taking hold with both hands of the handhold in front of him, the one attached to the rear of the body of the car. Plaintiff further testified that the car did not stop at J street, but went by fast; that he wanted to move back onto the platform of the car, but could not, but the reason why he could not is not given; that the car went fast all the time; that he got scared so badly he fell down—fell down on the street. The only other witness who testified in regard to the happening of the accident was Henry Kochelek. Mr. Kochelek testified that he was a passenger on the same train, and that he sat in the trailer car, on the west or right-hand side thereof, and within about two feet of the front end; that the conductor stood on the front platform of the trailer with his hand upon the brake; that he (witness) saw plaintiff standing on the rear platform of the first car; that as the car was pretty near hitting J street he saw plaintiff motion to the conductor and start to walk off, and he noticed 'the jar, or something.' This 'jar or something' occurred while the plaintiff was still upon the platform of the car. Kochelek stated that he didn't know what followed after plaintiff struck the step; that he couldn't say how plaintiff got down the step, because he paid no attention; that as plaintiff moved west on the platform the car was going a pretty good gait, kind of jarring. Mr. Kochelek did not see the plaintiff fall, his attention being first attracted to the accident by the conductor ringing the bell and looking out on the side. The car stopped on the north side of K street, but Kochelek got off before it stopped 'to see who was hurt—to see if he really was getting off while it was going that gait. I wanted to see who he was.' This witness further testified that, after the car crossed J street, it was running about

25 or 30 miles an hour.  After plaintiff had rested his case, and after the arguments on defendant's motion for a peremptory instruction had been partly made, the plaintiff was given leave to withdraw his rest and to introduce further testimony.  Witness Kochelek was recalled, and testified that the car started to go faster when it was pretty close to J street—the north side of it; but this witness was unable to further describe this change in speed.  He could not tell how much of a change was made, nor how much faster the car was going.  John Bendekovitch testified that the distance from the south side of J street to the point where the plaintiff was picked up after the accident was 250 feet.  There was no evidence of any imperfection in the car or track, either as to construction or operation, nor that there was any unusual or extraordinary jarring or jerking of the car; neither that the plaintiff's fall to the street was caused by any jerking or jarring of the car or on account of any imperfection in either the car or the track.  At the close of plaintiff's case, on motion of the defendant, the trial court instructed the jury to return a verdict for defendant."

Considerable discussion has been devoted by counsel to the inquiry: What was the proximate cause of the accident? but that question seems to us to conceal no mystery.  Evidently the proximate cause was the concurrence of two circumstances, in the absence of either of which the accident would not have happened.  If the car had stopped at J street, the plaintiff would have alighted without injury.  If he had remained within the car or on the platform, he would have been carried onward in safety.  There is no other circumstance to which the mishap can be attributed.  The car does not appear to have been moving at an unaccustomed rate of speed, although the rate was high and was accelerated after crossing J street.  That the speed was high, some 25 miles an hour, and that it would be so accelerated, the conductor, it will be assumed, must have known, and the latter fact it is not shown that the passenger did know, but, as already said, the rapidity of the mo-

tion would have caused no harm, if the passenger had not attempted to alight. That he desired to alight at the point designated and would probably put himself in readiness so to do, the conductor had been informed, and had, besides, opportunity to observe. That the latter was negligent of his duty toward the former seems to us to be free from doubt.

But was the negligence of such a character that a reasonably capable and careful man in the position of the conductor would have anticipated the accident as a probable consequence thereof? This raises the question whether the conduct of the passenger was such as no ordinarily intelligent and careful man would have shown under the same or similar circumstances, for it was upon such conduct that the conductor, although himself negligent, had a right to rely. It is not a case of intentionally and voluntarily standing upon a car step or running-board for the purpose of continuous riding, which several courts have held to be negligence *per se,* but it is an instance of going down upon the step or board in anticipation of almost immediately leaving the same by alighting upon the ground when the car shall have stopped, or nearly so. Now, this is an act that men of all grades of intelligence, experience and prudence are frequently and constantly committing. We suppose it is done thousands of times every day in all the considerable cities of the United States, so that its frequency must be regarded as a matter of common knowledge of which the courts take judicial notice, and to hold that such an act is at all times and in all circumstances negligence *per se,* or in law, would be to say that the universal custom of intelligent and prudent men is such, which, as it seems to us, would be to utter an absurdity. But an act which is prudent in some or in most circumstances may be negligent or criminal in others; and the question now calling for decision is: Who shall discriminate the circumstances, the court or the jury? Applying the inquiry concretely to the facts of this

15

case, considering the speed of the car and the character of the locality, and the fact that the passenger had repeatedly notified the conductor of the place at which he desired to get off, and the known duty of the latter to give a signal to stop, and the knowledge of the passenger, if he had knowledge of the subject, whether the signal had been given, is not the question of negligence one of fact for the jury, rather than one of law for the court? In our opinion, the answer should be in the affirmative. It does not appear to us that the case is different in principle from that of a multitude of others in which the jury is required to say whether, under all the circumstances of the case, the conduct of a party was that of a reasonably or ordinarily intelligent and prudent man. And, the negligence of the defendant having been established, the burden of proving contributory negligence is upon it, and the question is one of fact for the jury.

We are therefore of opinion that the judgment of the district court should be reversed and a new trial granted.

CALKINS, C., concurs.

FAWCETT, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and a new trial granted.

REVERSED.